# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
                         )

**John W. Steinmetz and Jane C. Steinmetz,**  )
                         )

      **Plaintiffs,**              )
                         )

       **v.**                  )     **Civil Action No.: 15-cv-13594-DJC**
                         )

**Coyle & Caron, Inc.,**         )
                         )

      **Defendant.**          )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                           **July 29, 2016**

## I.    Introduction

Plaintiffs John W. Steinmetz and Jane C. Steinmetz ("Plaintiffs") have filed this lawsuit against Defendant Coyle & Caron, Inc. ("Coyle & Caron") alleging negligence, gross negligence, defamation and violation of Mass. Gen. L. c. 93A.  D. 1 ¶¶ 28-40.  Coyle & Caron has moved to dismiss pursuant to Mass. Gen. L. c. 231, § 59H and, alternatively, pursuant to Fed. R. Civ. P. 12(b)(6).  D. 5.  For the reasons stated below, the Court ALLOWS the motion.

## II.    Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged present a plausible claim for relief.  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  To make that determination, the Court engages in a context-specific, two-step process.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (citation omitted).  To begin, the Court closely reads the complaint to identify and separate the factual allegations from the

conclusory legal allegations in the complaint. Id. The Court accepts only the factual allegations as true. Id. Looking to the factual allegations and viewing them as a whole, the Court must determine whether those allegations amount to a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).

## III.   Factual Background

The following facts are taken from Plaintiffs' complaint and accepted as true for the purposes of this motion. Plaintiffs are the owners of land at 1 James Island Way, Cohasset, Massachusetts (the "Property"). D. 1 ¶ 7. The Property is part of James Island, a peninsula with wetland resources that is surrounded by Inner Little Harbor. Id. ¶¶ 7, 10. Plaintiffs seek to build a single family dwelling on the Property. Id. ¶ 10. Plaintiffs submitted a notice of intent application to the Cohasset Conservation Commission ("Conservation Commission"). Id. A group entitled the James Island Preservation Group ("Preservation Group") formed to oppose Plaintiffs' proposed construction. Id. ¶ 13.

Coyle & Caron is a Florida landscape design firm. Id. ¶ 14. Plaintiffs allege that Coyle & Caron, specifically its president Sally Coyle ("Coyle"), worked with the Preservation Group to prepare false, fraudulent and defamatory renderings of Plaintiffs' proposed construction ("Renderings"). Id. ¶ 17. Plaintiffs allege that Coyle & Caron's Renderings were gross distortions that were designed to instill fear and create animosity towards Plaintiffs. Id. ¶ 17. According to Plaintiffs, the Renderings were generated from an incorrect view location, involved discrepancies of the horizon lines, contained incorrect house orientation, incorrectly represented the size and scale of the house and lacked an accurate three-dimensional model. Id. ¶ 22. As alleged, at least one Rendering was posted on a Facebook page created by the Preservation Group and circulated

throughout Cohasset and Massachusetts.  Id. ¶¶ 18-19.  Plaintiffs further allege that Coyle & Caron

submitted the Renderings to the Conservation Commission.  Id. ¶ 20.  On September 3, 2015,

Coyle appeared in person before the Conservation Commission to present the Renderings.  Id.

The Conservation Commission ultimately voted to reject Plaintiffs' proposed construction.

Id. ¶¶ 14, 26.  Plaintiffs allege that Coyle & Caron's Renderings had a dramatic impact upon the

Conservation Commission's decision.  Id. ¶ 27.  According to Plaintiffs, Coyle & Caron was

largely behind the Preservation Group's success in selling a misrepresentation of Plaintiffs'

proposed construction to the public and to the Conservation Committee.  Id. ¶ 14.

## IV.    Procedural History

Plaintiffs instituted this action on October 19, 2015.  D. 1.  Coyle & Caron subsequently

moved to dismiss.  D. 5.  The Court heard the parties on the pending motion and took the matter

under advisement.  D. 15. [1]

## V.    Analysis

Coyle & Caron casts its motion as a special motion to dismiss pursuant to the Strategic

Litigation against Public Participation statute ("anti-SLAPP statute").  Mass. Gen. L. c. 231, §

59H.  In the alternative, Coyle & Caron moves for dismissal pursuant to Fed. R. Civ. P 12(b)(6).

D. 5.  Where, as here, the moving party files a special motion to dismiss and asserts alternative

grounds for dismissal, courts typically address the special motion to dismiss first.  See Kobrin v.

Gastfriend, 443 Mass. 327, 341 (2005) (citation omitted).  Thus, the Court begins with the motion

brought pursuant to the anti-SLAPP statute.

---

[1]    The Court grants *nunc pro tunc* the motion for leave to file an amicus brief by the American
Civil Liberties Union.  D. 16.  In reaching its decision, the Court notes that it has reviewed and
considered not only the briefing filed by the parties, but also the amicus brief filed by the.  D. 16-
1.

### A.    Coyle & Caron's Special Motion to Dismiss

The purpose of the anti-SLAPP statute is to protect the right to petition under the Massachusetts and United States Constitution from the burden of meritless lawsuits.  See Town of Hanover v. New England Reg'l Council of Carpenters, 467 Mass. 587, 594 (2014).  To that end, the statute provides for a special motion to dismiss that allows courts to "dispose expeditiously of meritless lawsuits that may chill petitioning activity."  Id. (quoting Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 166 (1988)).  Through special motions to dismiss, such lawsuits are "'resolved quickly with minimum cost to citizens who have participated in matters of public concern.'"  Duracraft Corp., 427 Mass. at 161 (internal quotation marks and citation omitted).  The anti-SLAPP statute defines "the exercise of the right to petition" as, *inter alia*, a written or oral statement submitted to a legislative, executive or judicial body or any other governmental proceeding or made in connection with an issue under consideration by any such body or proceeding.  Mass. Gen. L. Ann. c. 231, § 59H.  In drafting the statute, "the Legislature intended to enact very broad protection for petitioning activities."  Duracraft Corp., 427 Mass. at 162.

Plaintiffs raise three challenges to the applicability of the anti-SLAPP statute to this action.  D. 7.  Plaintiffs contend that (1) the anti-SLAPP statute does not apply in federal court, D. 7 at 4, (2) the anti-SLAPP statute does not apply to "disinterested expert witnesses," D. 7 at 5-10, and (3) the anti-SLAPP statute is unconstitutional, D. 14 at 5-6; D. 22 at 1-2.  In addition, Plaintiffs argue that, even if the anti-SLAPP statute applies, Coyle & Caron has failed to meet its threshold burden under the anti-SLAPP statute.  D. 7 at 10-11.

### 1.    The Anti-SLAPP Statute Applies in Federal Courts

As a general matter, "a federal court sitting in diversity jurisdiction applies the state's substantive law and the federal procedural rules."  Godin v. Schencks, 629 F.3d 79, 85 (1st Cir.

2010).  Moreover, "it is long settled that the allocation of burden of proof is substantive in nature and controlled by state law."  Id. at 89 (citing Palmer v. Hoffman, 318 U.S. 109, 117 (1943)). Thus, to determine if the statute applies in federal courts, this Court must determine whether the statute is substantive.  On a special motion to dismiss pursuant to the Massachusetts anti-SLAPP statute, the burden is first assigned to the movant who must demonstrate that the non-movant's claim is based strictly upon petitioning activity and "ha[s] no substantial basis other than or in addition to the petitioning activities."   See Fustolo v. Hollander, 455 Mass. 861, 865 (2010) (citation and internal quotation marks omitted).  If the moving party satisfies the burden of demonstrating petitioning activity, the burden then shifts to the non-moving party to demonstrate by a preponderance of the evidence that the petitioning activity "'lacked any reasonable factual support or any arguable basis in law.'"  Fustolo, 455 Mass. at 865 (quoting Baker v. Parsons, 434 Mass. 543, 553 (2001)).  Because the anti-SLAPP statute assigns the burden in these ways and sets out the scope of the burden for the specific category of cases concerning the constitutional right to petition, the anti-SLAPP statute is substantive rather than procedural.  See Godin, 629 F.3d at 89.

In Godin, the First Circuit applied this reasoning to reach the conclusion that the Maine anti-SLAPP statute is substantive and therefore applies in federal court.  See Godin, 629 F.3d at 88.  In Godin, the First Circuit explained that the Maine anti-SLAPP statute has substantive aspects, pointing to, *inter alia*, the fact that the statute shifts the burden to the plaintiff to defeat the special motion to dismiss, the statute set outs the scope of that burden and the statute alters what plaintiffs must prove to prevail.  Id. at 88-89.  Moreover, unlike federal procedural rules which are applicable to all categories of cases, id., the Maine anti-SLAPP statute focuses upon a specific category of cases:  lawsuits based upon a defendant's exercise of his constitutional petitioning rights.  Id. at 88.  The First Circuit explained that the statute addresses a different matter

than Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 56 do since neither Fed. R. Civ. P. 12(b)(6) or Fed.

R. Civ. P. 56 "determine[] which party bears the burden of proof on a state-law created cause of

action."  Id. at 89.  In the end, the First Circuit described the Maine anti-SLAPP statute as "so

intertwined with a state right or remedy that it functions to define the scope of the state-created

right."  Id. (citation and internal quotation marks omitted).  For these reasons, the statute could not

"be displaced" by federal procedural rules.  Id.  Additionally, the First Circuit recognized that, as

a policy matter, if federal courts declined to apply the anti-SLAPP statute, "the incentives for

forum shopping would be strong:  electing to bring state-law claims in federal as opposed to state

court would allow a plaintiff to [*inter alia*] avoid [the anti-SLAPP statute's] burden-shifting

framework."[2]  Id. at 92.

The reasoning and conclusion of Godin extend to the Massachusetts anti-SLAPP statute

because, as three judges in this district have expressly recognized, the Massachusetts anti-SLAPP

statute is in all relevant respects the same as the Maine anti-SLAPP statute.  See Bargantine v.

Mechanics Co-op. Bank, No. 13-cv-11132-NMG, 2013 WL 6211845, at *3 (D. Mass. Nov. 26,

2013) (concluding that the holding of Godin extends to the Massachusetts anti-SLAPP statute

because "[t]he Massachusetts anti-SLAPP statute is . . . in all respects identical to the Maine

statute"); Sullivan v. Flaherty, No. 14-cv-14299-ADB, 2015 WL 1431151, at *5 n.5 (D. Mass.

---

[2]  Indeed, for these reasons, the Second, Fifth and Ninth Circuit have concluded that anti-SLAPP statutes apply in federal court.  See, e.g.,  Adelson v. Harris, 774 F.3d 803, 809 (2d Cir. 2014) (explaining that the district court's application of the Nevada anti-SLAPP statute was "unproblematic"); Henry v. Lake Charles Am. Press, L.L.C., 566 F.3d 164, 169-70 (5th Cir. 2009) (approving of lower court's application of Louisiana anti-SLAPP statute in federal proceedings); U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 973 (9th Cir. 1999) (citation omitted) (concluding that California's anti-SLAPP statute applies in federal proceedings because the statute reflects "important, substantive state interests,"  protects "'the constitutional rights of freedom of speech and petition for redress of grievances'" and does not directly collide with the Federal Rules of Civil Procedure).

Mar. 27, 2015) (noting that the court was "inclined to agree" with the view that "based on the logic of <u>Godin</u>" and because of the "similarity of language between the Maine and Massachusetts anti-SLAPP statutes . . . the Massachusetts anti-SLAPP statute is also substantive"); <u>Pomponio v. Town of Ashland</u>, No. 15-cv-10253-IT, 2016 WL 471285, at *6 (D. Mass. Feb. 5, 2016) (rejecting the argument that "the anti-SLAPP statute is a procedural rule that does not apply in federal court" because the "same substantive aspects" that are in the Maine anti-SLAPP statute are in the Massachusetts anti-SLAPP statute).   Accordingly, the Massachusetts anti-SLAPP statute applies in federal courts.  <u>See</u> <u>Shire City Herbals, Inc. v. Blue</u>, 15-cv-30069-MGM, 2016 WL 2757366, at *7 (D. Mass. May 12, 2016) (applying Massachusetts anti-SLAPP statute's burden-shifting framework and granting special motion to dismiss).

Plaintiffs' argument that a line of district court cases predating <u>Godin</u> compel the conclusion that the anti-SLAPP statute does not apply in federal courts, D. 7 at 4-5, is unavailing. The conclusions of those cases, however, were rejected by the First Circuit in <u>Godin</u>.  By contrast, Plaintiffs point to no district court opinion released after <u>Godin</u> wherein the Court concluded that the anti-SLAPP statute does not apply in federal courts.  Instead, in post-<u>Godin</u> rulings, judges have concluded that the Massachusetts anti-SLAPP statute is applicable in federal courts and, in so doing, have concluded that the pre-<u>Godin</u> line of cases upon which Plaintiffs rely are no longer persuasive.  <u>See</u> <u>Bargantine</u>, 2013 WL 6211845, at *3; <u>Sullivan</u>, 2015 WL 1431151, at *5 n.5; <u>Pomponio</u>, 2016 WL 471285, at *6; <u>Shire City Herbals, Inc.</u>, 2016 WL 2757366, at *7.  For all of these reasons, the Court concludes that the anti-SLAPP statute applies in federal courts.

### 2.   The Anti-SLAPP Statute Applies to Third Parties Assisting in Petitioning Activity

Plaintiffs contend that even if the anti-SLAPP statute applies in federal courts, it does not apply in this suit because Coyle & Caron was not petitioning on its own behalf.  D. 7 at 1-2, 5.

Plaintiffs describe Coyle as a "disinterested expert witness," id. at 2, and a "disinterested paid witness who had no more than a mere contractual connection to the proceedings that are the basis of the alleged petitioning activity." Id. at 7.  Plaintiffs contend that the anti-SLAPP statute's protections do not reach such actors.  The Court does not agree.

"'[P]etitioning has been consistently defined to encompass a 'very broad' range of activities in the context of the anti-SLAPP statute." Blanchard v. Steward Carney Hosp., Inc., 89 Mass. App. Ct. 97, 102 (2016) (quoting N. Am. Expositions Co. Ltd. P'ship v. Corcoran, 452 Mass. 852, 861 (2009)).  The anti-SLAPP statute defines "a party's exercise of its right to petition" as, *inter alia*, "any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding" and "any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration." Mass. Gen. L. c. 231, § 59H.  Petitioning activity includes, *inter alia*, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signatures, lobbying for legislation and engaging in peaceful demonstrations. See Town of Hanover, 467 Mass. at 591.  To determine whether statements constitute petitioning activity, courts consider the "over-all context in which they were made." Blanchard, 89 Mass. App. Ct. at 102 (quoting N. Am. Expositions Co. Ltd. P'ship, 452 Mass. at 862).

In recognition of this broad definition of petitioning activity, Massachusetts courts have held that the protections of the anti-SLAPP statute extend to those who are "engaged to assist [a nongovernmental person or entity] in the petitioning activity." Keegan v. Pellerin, 76 Mass. App. Ct. 186, 192 (2010).  In the context of the anti-SLAPP statute, "making statements to seek redress

is not always an individual activity." Town of Hanover, 467 Mass. at 593. Accordingly, "organizational support of the [directly aggrieved party]," falls within the definition of petitioning activity. Id. Third parties, including experts and professionals, may bring a special motion to dismiss where they are "sued for voicing the positions of a petitioning client." Plante v. Wylie, 63 Mass. App. Ct. 151, 157 (2005) (concluding that anti-SLAPP statute applied to attorney who advocated for his client in relation to client's petitioning activity); see Margolis v. Gosselin, No. 95-cv-03837-HJS, 1996 WL 293481, at *2-3 (Mass. Super. May 22, 1996). In other words, where a third party has been engaged by the directly aggrieved individual or entity to further advance the directly aggrieved party's objective, the third party "share[s]" in the directly aggrieved party's interest and petitioning rights. See Town of Hanover, 467 Mass. at 594. Moreover, where third parties assist directly aggrieved individuals or entities by submitting statements to a government body, the third parties' assistance constitutes petitioning activity. See e.g., Baker v. Parsons, 434 Mass. 543, 549, 551 (2001) (concluding that a scientist who submitted information to a government agency reviewing another individual's proposed construction on an island historically home to aquatic birds was protected by the anti-SLAPP statute); McLarnon v. Jokisch, 431 Mass. 343, 347 (2000) (explaining that the definition of petitioning activity was "broad enough to include" parent who "fil[ed] for abuse protection orders" in court on behalf of her son).

Denying third party experts and professionals the protections of the anti-SLAPP statute would have a "chilling effect on petitioning activity" and "hollow" the statute. Plante v. Wylie, 63 Mass. App. Ct. 151, 156-57 (2005). "[T]he costs . . . if such suits cannot promptly be dismissed are just as likely to impede the clients' right to petition" as permitting meritless suits against the directly aggrieved party for its own petitioning activity. Id. In explaining the purpose of and need for the anti-SLAPP statute, the Massachusetts legislature noted that "'full participation by persons

and organizations and robust discussion of issues before legislative, judicial, and administrative bodies and in other public fora are essential to the democratic process'" and that "'there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'"  Duracraft Corp., 427 Mass. at 161 (quoting preamble to 1994 House Doc. No. 1520).  Freedom of association is intimately intertwined with the ability to express ideas and petition.  See Caswell v. Licensing Comm'n for Brockton, 387 Mass. 864, 871-72 (1983) (citations omitted).  As such, "[p]unishing organizations that support constitutionally protected petitioning activity would only serve to inhibit both individual and organizational rights of petitioning."  Town of Hanover, 467 Mass. at 594 (citing Plante, 63 Mass. App. Ct. at 157).  Thus, both caselaw and policy compel the conclusion that the anti-SLAPP statute applies to third parties who are engaged to assist the petitioning entity or individual.

In asserting its argument that parties that do not petition "on their own behalf" are not protected by the anti-SLAPP statute, Plaintiffs rely extensively upon Kobrin, 443 Mass. at 327. Korbin, however, was focused specifically upon whether government actors and those acting on behalf of the government can seek relief under the anti-SLAPP statute.  See Kobrin, 443 Mass. at 332.  The defendant in Korbin had been hired by the government and the court's decision that the anti-SLAPP statute did not apply to the defendant turned upon that fact:  "the statute is designed to protect overtures to the government by parties petitioning in their status as citizens. It is not intended to apply to those performing services for the government as contractors."  Id.  Courts have recognized that Korbin stands for the limited proposition that "the government cannot 'petition' itself within the meaning of [the anti-SLAPP statute]."  Moriarty v. Mayor of Holyoke, 71 Mass. App. Ct. 442, 447-48 (2008) (holding that the anti-SLAPP statute did not apply to mayor

and assistant city solicitor who had acted as agents of the city).  Plaintiffs' reliance upon Fisher v. Lint is unavailing for the same reason.  Fisher v. Lint, 69 Mass. App. Ct. 360, 365 (2007).  Fisher merely reiterates the rule that the government cannot petition itself.  Id.  In Fisher, the court held, in relevant part, that the anti-SLAPP statute did not apply to a state trooper who, at the instruction of his supervisor, investigated and made statements to internal affairs regarding the misconduct of another state officer.  Id.

The proposition that the government cannot petition itself does not disrupt the Court's conclusion that non-government entities, such as Coyle & Caron, that assist in petitioning activity are protected by the anti-SLAPP statute.  See, e.g., Keegan, 76 Mass. App. Ct. at 192 (rejecting the plaintiff's argument that the anti-SLAPP statute did not apply because the defendant "was not petitioning on his own behalf" and explaining that Korbin did not control because Korbin "rest[s] on the commonsense principle that a statute designed to protect the constitutional right to petition has no applicability to situations in which the government petitions itself"); Town of Hanover, 467 Mass. at 593 (concluding that the anti-SLAPP statute applied after rejecting town's reliance upon Korbin on the grounds that Korbin addressed "an expert witness hired by a government agency").

Plaintiffs' reliance upon Fustolo v. Hollander is also unavailing.  Fustolo v. Hollander, 455 Mass. 861 (2010).  In Fustolo, the defendant seeking the protection of the anti-SLAPP statute was a reporter who had not been assisting, engaged with or contracted by any aggrieved party or individual in their petitioning activity.  Id. at 863-64.  The defendant-reporter, who worked for an independent newspaper had merely been reporting on a public meeting.  Id. at 862-63.  Indeed, the defendant-reporter affirmatively denied representing, working for or advancing any particular viewpoint.  Id. at 869.  In that context, the court explained that the anti-SLAPP did not apply and the defendant-reporter was instead protected by "the common law of defamation, with its

constitutional overlay." Id. at 870.  Accordingly, Fustolo is inapposite to cases, like this one, where the third party is engaged by a directly aggrieved party and embraces and advances a particular viewpoint.  For all of these reasons, the anti-SLAPP statute applies to third parties who assist in petitioning activity to advance the interests of their clients.

### 3.   Plaintiffs' Challenge to the Constitutionality of the Massachusetts Anti-SLAPP Statute Is Unavailing

Finally, at oral argument and in supplemental briefings, Plaintiffs argue that the Massachusetts anti-SLAPP statute is unconstitutional under both the Massachusetts and United States Constitution because the statute violates the right of trial by jury.  D. 14 at 5-6; D. 22 at 1-2.  In support of this argument, Plaintiffs rely upon Davis v. Cox, 183 Wash. 2d 269 (2015).  In Davis, the Supreme Court of Washington held that the Washington anti-SLAPP statute violated the Washington Constitution because the statute required "a truncated adjudication of the merits of a plaintiff's claim, including nonfrivolous factual issues, without a trial." Id. at 275, 294.  As the court explained, special motions to dismiss pursuant to the Washington anti-SLAPP statute involved two steps:  (1) the moving party had the burden of showing by a preponderance of the evidence that the claim was based upon activity involving public participation and petitioning (2) if that burden was satisfied, the burden shifted to the non-moving party to "to establish by clear and convincing evidence a probability of prevailing on the claim." Id. at 276 (internal quotation marks and citation omitted).  The court declared the statute unconstitutional in violation of the right to a trial by jury under the Washington Constitution because, in the court's view, the second assignment of the burden under the statute "require[d] the trial court to weigh the evidence and make a factual determination of plaintiffs' probability of prevailing on the claim." Id. at 280 (citation and internal quotation marks omitted).

The reasoning of <u>Davis</u>, however, turned upon the specific nature of the Washington anti-SLAPP statute and the Washington Constitution.  <u>Id.</u> at 275.  Unlike the Washington anti-SLAPP statute, the Massachusetts anti-SLAPP statute does not require courts to assess the non-moving party's likelihood of prevailing on their claims.  <u>Fustolo</u>, 455 Mass. at 865 (quoting <u>Baker</u>, 434 Mass. at 553).  Instead, under the Massachusetts anti-SLAPP statute, courts assess whether the petitioning activity "'lacked any reasonable factual support or any arguable basis in law.'"  <u>Id.</u>  Indeed, in reaching its decision in <u>Davis</u>, the Supreme Court of Washington recognized that "among the slight majority of states that have adopted an anti-SLAPP statute, the details of these statutes vary significantly" and for that reason, the court declined to rely upon out of jurisdiction cases.  <u>Davis</u>, 183 Wash. 2d at 283.

Moreover, the Supreme Judicial Court has reviewed and applied the Massachusetts anti-SLAPP statute, implicitly approving of the statute's constitutionality each time it did so.  <u>See, e.g.</u>, <u>Town of Hanover</u>, 467 Mass. at 587; <u>N. Am. Expositions Co. Ltd. P'ship</u>, 452 Mass. at 852; <u>Kobrin</u>, 443 Mass. at 327; <u>Duracraft Corp.</u>, 427 Mass. at 156.

### 4.      Coyle & Caron Has Met its Threshold Showing under the Anti-SLAPP Statute

Having resolved the general applicability of the anti-SLAPP statute to this proceeding, the Court turns to whether Coyle & Caron has satisfied its burden under the statute.  The burden-shifting standard for a special motion to dismiss pursuant to the anti-SLAPP statute is well-established.  <u>See</u> <u>Town of Hanover</u>, 467 Mass. at 595.  First, the party seeking the protection of the anti-SLAPP statute must present pleadings and affidavits that provide a "threshold" showing that the claims against the party moving for dismissal are based exclusively upon that party's petitioning activities.  <u>See</u> <u>id.</u> (citing <u>Duracraft Corp.</u>, 427 Mass. at 167-68).  Thereafter, the claims are subject to dismissal unless the nonmoving party can establish by a preponderance of the

evidence that the moving party's petitioning activity was devoid of any reasonable factual support or any arguable basis in law and its actions caused actual injury. See Town of Hanover, 467 Mass. at 595 (citing Mass. Gen. L. c. 231, § 59H).

As to the initial showing, Plaintiffs do not dispute that the Preservation Group's opposition to Plaintiffs' proposed construction and presentation of that opposition to the Conservation Commission constitutes petitioning activity. D. 7 at 2. Instead, Plaintiffs argue that the Preservation Group's petitioning interest cannot be ascribed to Coyle & Caron. Id. at 5. In this circumstance, however, where Plaintiffs concede that Coyle & Caron was retained for the specific purpose of furthering the Preservation Group's petitioning efforts before a government body, D. 1 ¶¶ 14, 16-17, 20, Coyle & Caron shares in the Preservation Group's petitioning interest. See Town of Hanover, 467 Mass. at 594.

The only basis Plaintiffs offer for their alleged injury is Coyle & Caron's creation of, submission of and presentation to the Conservation Commission regarding the Renderings. D. 1 ¶¶ 28, 34, 37-40. Plaintiffs' allegations recognize that the Preservation Group "hired [Coyle & Caron] to create renderings of Plaintiffs' house" and to promote the Preservation Group's "message." D. 1 ¶ 16. As alleged, Coyle & Caron "agreed to create the Renderings . . . for the [Preservation Group], and did exactly what [Coyle & Caron's] clients wanted." Id. ¶ 17. Coyle & Caron submitted the Renderings to the Conservation Commission on behalf of the Preservation Group. Id. ¶ 17. Moreover, Coyle, president of Coyle & Caron, has submitted an affidavit attesting to the fact that Coyle & Caron was contracted specifically to assist the Preservation Group in its opposition to Plaintiffs' proposed construction. D. 6-1 ¶¶ 19-21. On the materials Coyle & Caron submitted to the Conservation Commission, it was specifically noted that "Coyle and Caron Inc. has been retained by the James Island Preservation Group." D. 6-1 at 16. In sum, in creating and

submitting the Renderings, Coyle & Caron was merely advancing the interests of the Preservation Group.  Thus, Coyle & Caron's conduct constitutes petitioning activity under the anti-SLAPP statute.  <u>See, e.g.</u>, <u>Plante</u>, 63 Mass. App. Ct. at 157; <u>Benoit v. Frederickson</u>, 454 Mass. 148, 153 (2009) (concluding that parents who provided assistance to their daughter as she reported crimes to the police had themselves petitioned for the purpose of the anti-SLAPP statute).

Coyle & Caron's conduct is substantially similar to the conduct that was found to constitute petitioning activity in <u>Margolis v. Gosselin</u>, No. 95-cv-03837-HJS, 1996 WL 293481, at *2 (Mass. Super. May 22, 1996).  In <u>Margolis</u>, the defendant, a public relations professional, was hired by Stop & Shop to support Stop & Shop's efforts in opposing a proposed development in a parcel of land subject to the Wetlands Protection Act.  <u>Id.</u> at *1.  As part of her work for Stop & Shop, the defendant solicited signatures from residents to persuade the local conservation board to revise a relevant order the board had issued.  <u>Id.</u>  The plaintiff alleged that in the process of collecting signatures the defendant made false statements regarding the plaintiff's proposed development. <u>Id.</u>  Rejecting the plaintiff's argument that the anti-SLAPP statute did not apply because, *inter alia*, the defendant had been an "agent" of the plaintiff's competitor, the court concluded that the defendant's conduct before the local board constituted petitioning activity and granted the defendant's special motion to dismiss.  <u>Id.</u> at *2, *4.  Like the defendant in <u>Margolis</u>, Coyle & Caron's conduct amounts to petitioning activity even though Coyle & Caron was hired by another entity to advance that entity's interest before a local government board.  Like the defendant in <u>Margolis</u>, Coyle & Caron's assistance in efforts before a local government board constituted petitioning activity.

Consequently, to the extent that Plaintiffs intended to argue that the protections of the anti-SLAPP statute extend only to attorneys assisting in petitioning activity, D. 7 at 8, or that Coyle &

Caron's status as a retained party that was receiving compensation for its services bars Coyle & Caron from the protections of the anti-SLAPP statute, D. 14 at 3-4, the Court is unpersuaded. It is well-established that "the motive behind the petitioning activity is irrelevant at this initial stage." See, e.g., Office One, Inc. v. Lopez, 437 Mass. 113, 122 (2002); Margolis, 1996 WL 293481, at *2-3 (noting that "the plain language of [the anti-SLAPP statute] does not limit its application to public interests or make the motivation of protected parties relevant in any way"). Moreover, the anti-SLAPP statute "has been held to apply to activity motivated by commercial purposes." Margolis, 1996 WL 293481, at *2-3; N. Am. Expositions Co. Ltd. P'ship, 452 Mass. at 863 (explaining that "the fact that the speech involves a commercial motive does not mean it is not petitioning" under the anti-SLAPP statute). For all of these reasons, Coyle & Caron's actions that underlie Plaintiffs' claim constitutes exclusively of petitioning activity.

### 5. Coyle & Caron's Renderings Had a Basis in Law and Fact

To defeat Coyle & Caron's special motion to dismiss, Plaintiffs must establish by a preponderance of the evidence that Coyle & Caron's exercise of the right to petition "was devoid of any reasonable factual support or any arguable basis in law." Margolis, 1996 WL 293481, at *3. The precise question before the Court is whether Coyle & Caron's Renderings "'contain[] any reasonable factual or legal merit at all.'" Bargantine, 2013 WL 6211845, at *5 (citing Wenger v. Aceto, 451 Mass. 1, 7 (2008)).

The Court concludes that Coyle & Caron's Renderings had reasonable factual support. Coyle & Caron has made a substantial showing, via affidavits and pleadings, that its Renderings were the product of well-trained professionals who examined multiple sources and engaged in careful consideration. As an initial matter, Coyle has extensive qualifications as an architect, including a bachelor's degree in landscape architect from the College of Architecture at the

University of Florida, a master of landscape architecture from the Graduate School of Design at Harvard University, D. 6-1 ¶ 3-4, professional licenses in Massachusetts and Florida, id. ¶ 4, membership in the American Society of Landscape Architects, id. ¶ 7, and employment in the architecture industry since at least 1993. Id. ¶ 6. Coyle & Caron's services to its clients include master planning, site design, construction documents, site models and renderings. Id. ¶ 16. Wetland restoration and reconstruction, habitat design for zoos and sustainable landscapes are among Coyle & Caron's particular areas of interest. Id.

In addition, Coyle & Caron's Renderings for the Preservation Group were based upon a review of relevant documents. Coyle's affidavit details the various materials Coyle & Caron received in preparation for creating the Renderings, including the James Island Way Site Plan Large House Review, architectural plans from the owner's architect, photos of James Island, a photo table listing additional photos of the island, Google earth screenshots, notice of intent plans, a grading sheet and a review letter by EcoTec, Inc.'s president. Id. ¶¶ 22, 27-28. Over the course of several days, Coyle & Caron reviewed these documents. Id. ¶ 24. Coyle & Caron engaged in dialogue with other professionals working for the Preservation Group. Id. ¶ 30. In preparing the draft, Coyle & Caron used Photoshop and AutoCad to create high resolution photographic files. Id. ¶¶ 31-33. In collaboration with the Preservation Group and other professionals hired by the Preservation Group, Coyle & Caron also created a three dimensional model of the view using a computer program called Sketchup. Id. ¶¶ 38-39. In sum, the Renderings had a factual basis because Coyle & Caron reasonably based its Renderings upon its skill and experience combined with the evidence, resources and materials available to it. See, e.g., Baker, 434 Mass. at 552 (concluding that the defendant's statements regarding the potential effect of increased construction on nearby bird population had a basis in fact where the defendant was "a biologist who had studied

bird populations on Clark's Island for many years"); Margolis, 1996 WL 293481, at *4 (concluding that the viewpoint upon which defendant petitioned was not devoid of factual basis where newspaper reports expressed similar concerns and defendant's concern "reasonably followed from the information defendant gathered from a site tour").

Even if Plaintiffs are correct that Coyle & Caron's Renderings were not entirely accurate, D. 7 at 12-13, the Renderings would still not be without a factual and legal basis.  To prevail, Plaintiffs must show that no reasonable person would conclude that there was a basis for Coyle & Caron's Renderings.  See Baker, 434 Mass. at 555.  The fact that the architect Plaintiffs have presented disagrees with Coyle & Caron's Renderings, D. 7-1, does not mean that the Renderings are without any basis in fact.  The mere existence of disagreement is not determinative here, because, given Coyle & Caron's skill set and methodology, a reasonable person could have agreed with Coyle & Caron at the time of the dispute.  See, e.g., Bargantine, 2013 WL 6211845, at *5 (concluding that defendant's police report had "reasonable factual support" even though the criminal complaint was ultimately dismissed); Donovan v. Gardner, 50 Mass. App. Ct. at 600 (explaining that "[t]he fact that the incidents were resolved in the plaintiffs' favor . . . does not mean that there was no colorable basis for their petitions").  Thus, Coyle & Caron's Renderings had a basis in law and fact and Coyle & Caron is entitled to dismissal under the anti-SLAPP statute.[3]

---

[3]  Plaintiffs' failure to satisfy this prong is an independently sufficient basis for the Court to grant Coyle & Caron's special motion to dismiss.  See, e.g., Baker, 434 Mass. at 552 n.14 (explaining that there was no need to reach the second element where the plaintiff failed to meet his burden on the first element); Margolis, 1996 WL 293481, at *4 (stating the same).  For the sake of thoroughness, the Court reviews the injury prong.

6.      **Coyle & Caron's Renderings Did Not Cause Actual Injury to Plaintiffs**

Even if the Renderings lacked a reasonable basis in fact and law, Coyle & Caron would still be entitled to dismissal because Plaintiffs have failed to show that the Renderings caused them actual injury.  See Town of Hanover, 467 Mass. at 596 (explaining that the nonmoving party has the burden of showing actual injury by a preponderance of the evidence).  Here, the Conservation Commission's Memorandum of Decision states that Plaintiffs' proposal was rejected because four members of the Conservation Commission determined that the proposed construction, specifically its driveway, would adversely affect adjacent salt marsh wetlands and Plaintiffs failed to demonstrate their entitlement to a variance.  D. 6-1 at 30.  The Memorandum of Decision makes no reference to the Renderings.  Id.  Thus, the Renderings, even if they suffered from the inaccuracies Plaintiffs allege, did not cause the denial of Plaintiffs' proposal.  Moreover, Coyle & Caron has asserted and Plaintiffs have not disputed that two members of the Conservation Commission who voted against Plaintiffs' proposed construction stated publically that they were not considering Coyle & Caron's Renderings in reaching their decision.  Id. at 10.  To the extent that Plaintiffs intended to argue that they suffered actual injury in the form of "ridicule" on Facebook, D. 7 at 14, Plaintiffs have failed to offer any authority suggesting that such allegations can rise to the level of "actual injury" and have failed to present sufficient affidavits or other evidentiary material to support its claim of actual injury.  Therefore, Plaintiffs have failed to make a showing of actual injury and Coyle & Caron is entitled to dismissal of Plaintiffs' claims.

B.      **Coyle & Caron's Motion to Dismiss Pursuant to Rule 12(b)(6)**

In the alternative to its special motion dismiss pursuant to the anti-SLAPP statute, Coyle & Caron moves for dismissal pursuant to Rule 12(b)(6) for failure to state a claim, D. 5, and, in the interest of completeness, the Court addresses these bases for dismissal

**1.      Coyle & Caron Is Entitled to Dismissal of Plaintiffs' Negligence Claims**

In Count I and II, Plaintiffs allege negligence and gross negligence, respectively.  D. 1 ¶¶ 28-33.  Plaintiffs contend that Coyle & Caron "had a duty to use reasonable care not to improperly create and allow to be published the false, fraudulent and defamatory Renderings and Defendant breached its duties," D. 1 ¶ 29, and Coyle & Caron "had a duty to prevent foreseeable harm to Plaintiffs." [4]  D. 7 at 17.  Under Massachusetts law, whether there is a "[legal] duty is 'determined by balancing the foreseeability of harm, in light of all the circumstances, against the burden to be imposed.'"  Meridian At Windchime, Inc. v. Earth Tech, Inc., 81 Mass. App. Ct. 128, 132 (2012) (quoting Vaughan v. E. Edison Co., 48 Mass. App. Ct. 225, 229 (1999)).  A professional only owes a duty of care to a non-contractual third party where it was foreseeable and reasonable that the third party would rely upon the services provided by the professional and the professional had actual knowledge that the third party was relying upon the professional's services.  See id. at 135; see also Barret v. Wakefield Crossing, LLC, No. 11-cv-2329-MMK, 2012 WL 4903004, at *4 (Mass. Super. Oct. 4, 2012) (explaining that "[t]he allegedly negligent party . . . must have 'actual knowledge' of the plaintiff's reliance on its services").

Foreseeability of harm turns upon whether "the injured party's reliance on the services performed by the negligent party was reasonable."  Meridian At Windchime, Inc., 81 Mass. App. Ct. at 133; see Quigley v. Bay State Graphics, Inc., 427 Mass. 455, 461 (1998).  The requirement of foreseeability and reasonable reliance serves to "avoid the problem of imposing on [a professional] unlimited liability to an indeterminate class."  McCallum v. Rizzo, No. 94-cv-2878-MBS, 1995 WL 1146812, at *2 (Mass. Super. Oct. 13, 1995) (citation and internal quotation marks

---

[4]  Plaintiffs also characterize this suit as a "malpractice action based upon Defendant's failure to perform within the required professional standard of care."  D. 7 at 11.

omitted).  Indeed, it is the "rare instance[]" in which a duty of care extends between a professional and a non-client.  Id. at *3.

Plaintiffs have failed to allege that Coyle & Caron owed Plaintiffs, their non-clients, any duty of care or that Plaintiffs reasonably relied upon the Renderings.  Based upon Plaintiffs' allegations, at the time of the dispute Plaintiffs were aware that the Preservation Group actively opposed Plaintiffs' proposed construction, D. 1 ¶ 14, and Plaintiffs were aware that the Preservation Group hired Coyle & Caron "to create renderings of Plaintiffs' [proposed construction] that would improperly make it look like a 'seven-story Taj Mahal.'"  Id. ¶ 16. Plaintiffs allege that the Renderings "did exactly what they were designed to do" by resulting in "the wrongful denial of Plaintiffs' Project."  Id. ¶ 27.  Moreover, Plaintiffs expressly disputed the accuracy of the Renderings at the time of the hearing.  Id. ¶¶ 22-26.  Thus, Plaintiffs cannot argue that they reasonably relied upon the Renderings or that they had a reasonable expectation that the Renderings would be anything other than contrary to Plaintiffs' interests.  Indeed, in their opposition, Plaintiffs concede that they did not rely upon the Renderings and that doing so would "simply make[] no sense."  D. 7 at 16-17.  Accordingly, both negligence claims, counts I and II, must be dismissed because Plaintiffs have not and cannot allege that Plaintiffs reasonably relied upon the Renderings or that Coyle & Caron, as professionals, owed Plaintiffs, a non-contractual third party, any duty of care.[5]

---

[5]  Plaintiffs' belated attempt in their opposition to cast their negligence claim as a negligent misrepresentation claim, D. 7 at 17, does not alter this conclusion.  Even if Plaintiffs' claims in count I and/or II are treated as negligent misrepresentation claims, the claims fail because negligent misrepresentation also requires reasonable reliance.  See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 59 n.25 (2004) (explaining that "[a] defendant is liable for negligent misrepresentation if in the course of his business, he supplies false information for the guidance of others in their business transactions, causing and resulting in pecuniary loss to others by their justifiable reliance on the information, with failure to exercise reasonable care or competence in obtaining or communicating the information").  For all of the reasons discussed above, Plaintiffs

### 2.    Coyle & Caron Is Entitled to Dismissal of Plaintiffs' Defamation Claim

In Count III, Plaintiffs also assert a claim for defamation.  D. 1 ¶¶ 34-36.  To state a claim for defamation, a plaintiff must adequately allege that (1) the defendant made a statement to a third party that concerned the plaintiff (2) the statement was defamatory in that it could damage the plaintiff's reputation in the community (3) the defendant was at fault in making the statement and (4) the statement either caused economic loss or is actionable without economic loss.  See Walker v. President & Fellows of Harvard Coll., 82 F. Supp. 3d 524, 532 (D. Mass. 2014) (quoting Shay v. Walters, 702 F.3d 76, 81 (1st Cir. 2012)).  Plaintiffs allege that the Renderings were "false, fraudulent and defamatory."  D. 1 ¶ 34.  Plaintiffs allege that "[b]y creating and publishing the Renderings, Defendant did injure Plaintiffs' reputation within the community at large."  Id. ¶ 35.

The Renderings do not constitute a defamatory statement because the Renderings do not contain an objective statement.  "[D]efamation requires a false statement at its core."  Piccone v. Bartels, 785 F.3d 766, 771 (1st Cir. 2015).  Therefore, opinions are typically insufficient.  Id. Instead, "a statement generally must contain an 'objectively verifiable assertion,' to be defamatory."  Saad v. Am. Diabetes Ass'n, 123 F. Supp. 3d 175, 177 (D. Mass. 2015) (citing Levinsky's, Inc. v. Wal–Mart Stores Inc., 127 F.3d 122, 127 (1st Cir.1997)).  A statement that expresses "a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts" is not defamatory.  Id. (quoting Piccone v. Bartels, 785 F.3d 766, 771 (1st Cir. 2015)).

The Renderings constitute interpretations – Coyle & Caron's interpretation of Plaintiffs' proposed construction.  Plaintiffs allege that the Renderings were "created" by Coyle & Caron's

_____

have conceded that they did not rely upon the Renderings and even if Plaintiffs had relied upon the Renderings, that reliance would be unreasonable.

president, Coyle.   D. 1 ¶ 17.   As alleged, at the time the Renderings were created, Plaintiffs'

"house" was only a proposed design.   Id. ¶¶ 10, 12, 13-23.   Plaintiffs also describe the Renderings

as "drawing[s]," "depiction[s]" and "model[s]."   Id. ¶ 22-23.   Even if, as Plaintiffs allege, the

Renderings were "gross distortions," id. ¶ 17, the Renderings were mere interpretations of a

proposal.   D. 1-3 at 2; D. 1-4 at 2.   The Renderings cannot be proven false because, as alleged, the

proposed house the Renderings depict does not exist.   See Veilleux v. Nat'l Broad. Co., 206 F.3d

92, 108 (1st Cir. 2000) (explaining that "only statements that are 'provable as false' are actionable);

Feld v. Conway, 16 F. Supp. 3d 1, 4 (D. Mass. 2014) (granting motion to dismiss defamation claim

where the statement plaintiff pointed to "was obviously intended as criticism—that is, as opinion—

not as a statement of fact").

Moreover, the subjective nature of the Renderings is supported by the fact that the

Renderings were created within the context of the ongoing dispute regarding Plaintiffs' proposed

house and the resolution of Plaintiffs' application before the Conservation Commission.   See

Vranos v. Skinner, 77 Mass. App. Ct. 280, 296 (2010) (explaining that "[i]n deciding whether a

statement is defamatory, both the context in which and the circumstances under which the

statement was made are important considerations"); Saad, 123 F. Supp. 3d at 178 (explaining that

determination of whether allegedly defamatory statement may be described as an opinion "requires

an examination of the totality of the circumstances in which the specific challenged statements

were made, including the general tenor and context of the conversation and any cautionary terms

used by the person publishing the statement").   Because Plaintiffs have failed to allege a

defamatory communication, they have failed to state a claim for defamation.   See e.g., Amrak

Prods., Inc. v. Morton, 410 F.3d 69, 72-73 (1st Cir. 2005) (affirming the dismissal of a defamation

claim where "[t]he miscaptioned photograph in the instant case [was] not reasonably susceptible

of a defamatory meaning" after considering the photograph "in light of the entire context of the publication").

### 3.      Coyle & Caron is Entitled to Dismissal of Plaintiffs' Mass. Gen. L. c. 93A Claim

Plaintiffs' Mass. Gen. L. c. 93A claim fails because Plaintiffs have not alleged the requisite business transaction between Plaintiffs and Coyle & Caron.  To state a claim under Mass. Gen. L. c. 93A, a plaintiff must allege (1) that a person who is engaged in trade or business committed an unfair or deceptive trade practice and (2) that the unfair practice caused the plaintiff to suffer a loss of money or property.  See Kozaryn v. Ocwen Loan Servicing, LLC, 784 F. Supp. 2d 100, 102 (D. Mass. 2011) (citing Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 259, 2011 WL 1226974, *3 (D. Mass. April 4, 2011)).  "Apart from claims of unfair competition, a plaintiff must allege some sort of transaction between the parties for liability to attach." Swenson v. Yellow Transp., Inc., 317 F. Supp. 2d 51, 56 (D. Mass. 2004) (quoting L.B. Corp. v. Schweitzer-Mauduit Int'l, Inc., 121 F. Supp. 2d 147, 152 (D. Mass. 2000)).  Where "there [is] no relationship between the plaintiffs and the defendants at all prior to the accident . . .  it is axiomatic that the alleged wrongful conduct did not arise in a business context between them." Id. at 57.

Plaintiffs have alleged no business relationship between themselves and Coyle & Caron. Instead, Plaintiffs allege that Coyle & Caron were hired by the Opposition Group.  D. 1 ¶ 16. While Plaintiffs correctly note that the absence of privity of contract is not an automatic bar to a Mass. Gen. L. c. 93A claim, D. 7 at 19, "[t]he lack of any business relationship between [Plaintiffs] and [Coyle & Caron] is fatal to the 93A claim."  Noel v. CitiMortgage, Inc., No. 13-cv-3035-SF, 2014 WL 2802864, at *2 (Mass. Super. June 12, 2014), aff'd sub nom. Noel v. Citibank, 87 Mass. App. Ct. 1124 (2015).  Thus, Plaintiffs' Mass. Gen. L. c. 93A claim must be dismissed.  Id.

(dismissing Mass. Gen. L. c. 93A claim where a business relationship or transaction was not alleged).[6]

## VI.      Conclusion

For the foregoing reasons, the Court ALLOWS Coyle & Caron's special motion to dismiss.

D. 5.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[6] Plaintiffs have also argued that Coyle & Caron's motion to dismiss should be denied because Coyle & Caron violated Local Rule 7.1(a)(2) by bringing the motion to dismiss without first conferring with Plaintiffs. D. 7 at 3. Although compliance with the Local Rules is expected, "omitting to confer prior to filing a motion certain to be opposed does not warrant so severe a sanction as summary denial." Gerakaris v. Champagne, 913 F. Supp. 646, 651 (D. Mass. 1996). Plaintiffs have conceded that, if Coyle & Caron had conferred with Plaintiffs prior to filing this special motion, Plaintiffs would have simply "explained . . . all the reasons for why [the] motion is without merit and should not be filed." D. 7 at 3. Thus, even if Coyle & Caron had complied with the Local Rules, Plaintiffs would have maintained their opposition to the motion, which for all of the reasons discussed above, was a sound motion on the merits. Here, in the absence of prejudice, the punishment of summary denial would be excessive. See, e.g., Travelers Prop. Cas. Co. of Am. v. Noveon, Inc., 248 F.R.D. 87, 92 (D. Mass. 2008); Laporte v. Lab. Corp. of Am. Holdings, No. 13-cv-12084-FDS, 2014 WL 2818591, at *7 (D. Mass. June 20, 2014). Accordingly, the Court does not grant Plaintiffs' request for denial of the motion on this basis.